

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

_____ Division

FILED

DEC 01 2020

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

James Douglas Valdez
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

Stephen Kunzweiler and Cody Holbrook
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

*(to be filled in by the Clerk's Office)*

20CV-620 JED-JFJ

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | *James D. Valdez* |
| All other names by which you have been known: | *n/a* |
| ID Number | |
| Current Institution | *David L. Moss Criminal Justice Center* |
| Address | *300 N. Denver Ave.* |
| | *Tulsa*            *OK*            *74103* |
| | City            State            Zip Code |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | *Stephen Kunzweiler* |
| Job or Title *(if known)* | *District Attorney* |
| Shield Number | |
| Employer | *Tulsa County District Court* |
| Address | *500 S. Denver Ave. W. 9th Floor* |
| | *Tulsa*            *OK*            *74103* |
| | City            State            Zip Code |

☐ Individual capacity   ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | *Cody Holbrook* |
| Job or Title *(if known)* | *Tulsa Police* |
| Shield Number | *2610* |
| Employer | *Tulsa Police Dept.* |
| Address | |
| | *Tulsa*            *OK* |
| | City            State            Zip Code |

☒ Individual capacity   ☐ Official capacity

Defendant No. 3
    Name
    Job or Title *(if known)*
    Shield Number
    Employer
    Address

|  | *City* | *State* | *Zip Code* |
|--|--------|---------|-----------|

☐ Individual capacity  ☐ Official capacity

Defendant No. 4
    Name
    Job or Title *(if known)*
    Shield Number
    Employer
    Address

|  | *City* | *State* | *Zip Code* |
|--|--------|---------|-----------|

☐ Individual capacity  ☐ Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Fourth Amendment and Okla. Const. Art. II Sec. 30

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Case 4:20-cv-00620-JED-JFJ   Document 1 Filed in USDC ND/OK on 12/01/20   Page 4 of 52

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any
      statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."
      42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color
      of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of
      federal law.  Attach additional pages if needed.

*See Motion Attachment*

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☒ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☐ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☒ Other *(explain)*    *federal case pending*

## IV.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the
alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include
further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite
any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain
statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*See Attachment*

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.      What date and approximate time did the events giving rise to your claim(s) occur?

_August 28th, 2020_

D.      What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?*
        *Was anyone else involved?  Who else saw what happened?)*

Officer Cody Holbrook and Stephen Kunzweiler proceeding in a restraint of liberty.

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical
treatment, if any, you required and did or did not receive.

n/a

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.
If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for
the acts alleged.  Explain the basis for these claims.

Punitive damages $90,000.00 due to the arresting officer Holbrook and D.A. Stephen Kunzweiler acted in deceit restraining Valdez without determing cause.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

David L. Moss

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☒ No

☐ Do not know

If yes, which claim(s)?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☒ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

District Court (Tulsa County)

2.   What did you claim in your grievance?

Restraint of Liberty (Fourth Amendment and Okla. Const. Art. II Sec. 30)

3.   What was the result, if any?

Case dismissed

4.   What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

The action got terminated on 10/29/20

F.    If you did not file a grievance:

     1.    If there are any reasons why you did not file a grievance, state them here:

        I filed a motion to dismiss

     2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

        Stephen Kunzweiler Tulsa District Attorney, responded in a oral dismissal

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

        see OSCN Attachment

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
      Plaintiff(s) _____
      Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*
      n/a

3.   Docket or index number
      n/a

4.   Name of Judge assigned to your case
      n/a

5.   Approximate date of filing lawsuit
      n/a

6.   Is the case still pending?

     ☐ Yes

     ☐ No

     If no, give the approximate date of disposition. _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      n/a

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
     Plaintiff(s) _____
     Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

     n/a

3.   Docket or index number
     n/a

4.   Name of Judge assigned to your case
     n/a

5.   Approximate date of filing lawsuit
     n/a

6.   Is the case still pending?

     ☐ Yes

     ☐ No

     If no, give the approximate date of disposition    n/a

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

     n/a

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    11-18-20

Signature of Plaintiff    _James Valdez_

Printed Name of Plaintiff    James Valdez

Prison Identification #    1145439

Prison Address    300 N. Denver Ave. 74103
                   Tulsa                OK        74103
                   _City_              _State_    _Zip Code_

### B. For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____

           _City_              _State_    _Zip Code_

Telephone Number    _____

E-mail Address    _____

Ex. 1



# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

### IN THE DISTRICT COURT IN AND FOR TULSA COUNTY, OKLAHOMA

STATE OF OKLAHOMA,
    Plaintiff,
v.
JAMES DOUGLAS VALDEZ,
    Defendant.

No. CF-2020-3845
(Criminal Felony)

Filed: 09/03/2020
Closed: 10/29/2020

Judge: CF Docket D

## PARTIES

STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY
VALDEZ, JAMES DOUGLAS, Defendant

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| TULSA COUNTY PUBLIC DEFENDER | VALDEZ, JAMES DOUGLAS |

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Thursday, October 8, 2020 at 10:00 AM PRELIMINARY HEARING ISSUE (PUBLIC DEFENDER) | VALDEZ, JAMES DOUGLAS | Tanya Wilson | |
| Thursday, October 29, 2020 at 9:00 AM PRELIMINARY HEARING (NO ISSUE) | VALDEZ, JAMES DOUGLAS | Tanya Wilson | |

## COUNTS

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**  Count as Filed: FE1A, ENDANGERING OTHERS WHILE ELUDING POLICE OFFICER, in violation of 21 O.S. 540A (B)
Date of Offense: 08/28/2020

| Party Name | Disposition Information |
|---|---|
| VALDEZ, JAMES DOUGLAS | Disposed: DISMISSED, 10/29/2020. Dismissed-Request of the State<br>Count as Disposed: ENDANGERING OTHERS WHILE ELUDING POLICE OFFICER(FE1A)<br>Violation of 21 O.S. 540A (B) |

**Count # 2.**  Count as Filed: DU4II, UNLAWFUL POSSESSION OF CONTROLLED DRUG - METHAMPHETAMINE, in violation of 63 O.S. 2-402 A1
Date of Offense: 08/28/2020

| Party Name | Disposition Information |
|---|---|
| VALDEZ, JAMES DOUGLAS | Disposed: DISMISSED, 10/29/2020. Dismissed-Request of the State<br>Count as Disposed: UNLAWFUL POSSESSION OF CONTROLLED DRUG - METHAMPHETAMINE(DU4II)<br>Violation of 63 O.S. 2-402 A1 |

**Count # 3.**  Count as Filed: OBS, OBSTRUCTING AN OFFICER, in violation of 21 O.S. 540
Date of Offense: 08/28/2020

| Party Name | Disposition Information |
|---|---|
| VALDEZ, JAMES DOUGLAS | Disposed: DISMISSED, 10/29/2020. Dismissed-Request of the State<br>Count as Disposed: OBSTRUCTING AN OFFICER(OBS)<br>Violation of 21 O.S. 540 |

**Count # 4.**  Count as Filed: LP4, AFFIXING AN IMPROPER LICENSE PLATE, in violation of 47 O.S. 4-107(d)
Date of Offense: 08/28/2020

| Party Name | Disposition Information |
|---|---|
| VALDEZ, JAMES DOUGLAS | Disposed: DISMISSED, 10/29/2020. Dismissed-Request of the State<br>Count as Disposed: AFFIXING AN IMPROPER LICENSE PLATE (LP4)<br>Violation of 47 O.S. 4-107(d) |

# DOCKET

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 09-03-2020 | TEXT | CRIMINAL FELONY INITIAL FILING. Document Available at Court Clerk's Office | 1 | VALDEZ, JAMES DOUGLAS | |
| 09-03-2020 | INFORMATION | DEFENDANT JAMES DOUGLAS VALDEZ WAS CHARGED WITH COUNT #1, ENDANGERING OTHERS WHILE ELUDING POLICE OFFICER IN VIOLATION OF 21 O.S. 540A (B) | 1 | VALDEZ, JAMES DOUGLAS | |
| 09-03-2020 | INFORMATION | DEFENDANT JAMES DOUGLAS VALDEZ WAS CHARGED WITH COUNT #2, UNLAWFUL POSSESSION OF CONTROLLED DRUG - METHAMPHETAMINE IN VIOLATION OF 63 O.S. 2-402 A1 | 2 | VALDEZ, JAMES DOUGLAS | |
| 09-03-2020 | INFORMATION | DEFENDANT JAMES DOUGLAS VALDEZ WAS CHARGED WITH COUNT #3, OBSTRUCTING AN OFFICER IN VIOLATION OF 21 O.S. 540 | 3 | VALDEZ, JAMES DOUGLAS | |
| 09-03-2020 | INFORMATION | DEFENDANT JAMES DOUGLAS VALDEZ WAS CHARGED WITH COUNT #4, AFFIXING AN IMPROPER LICENSE PLATE IN VIOLATION OF 47 O.S. 4-107(D) | 4 | VALDEZ, JAMES DOUGLAS | |
| 09-03-2020 | TEXT | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE CF DOCKET E TO THIS CASE. | | | |
| 09-04-2020 | DAINS | DISTRICT ATTORNEY INSPECTION NOTIFICATION Document Available (#1047620726) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |
| 09-04-2020 | CTARRPL | JUDGE DAVID GUTEN: DEFENDANT PRESENT, IN CUSTODY AND PUBLIC DEFENDER APPOINTED AS COUNSEL OF RECORD. ARRAIGNMENT HELD. DEFENDANT WAIVES READING OF THE INFORMATION AND FURTHER TIME TO PLEAD. DEFENDANT ENTERS A PLEA OF NOT GUILTY. PRELIMINARY HEARING SET FOR 10-08-2020 @ 10:00 AM IN ROOM 347. BOND $25,000.00 AGGREVATED. DEFENDANT REMANDED TO CUSTODY. CASE REASSIGNED TO CF D DOCKET BASED ON CF-20-3454. | | VALDEZ, JAMES DOUGLAS | |
| 09-09-2020 | RETCO | RETURN COMMITMENT Document Available (#1047620964) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |
| 09-09-2020 | O | ARRAIGMENT COURT'S ORDER FOR REASSIGNMENT OF CRIMINAL DISTRICT JUDGE Document Available (#1047734631) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |
| 09-10-2020 | AFPCA | AFFIDAVIT & FINDING OF PROBABLE CAUSE T.R.A.C.I.S. (ARRESTED) Document Available at Court Clerk's Office | | VALDEZ, JAMES DOUGLAS | |
| 09-10-2020 | RETCO | RETURN COMMITMENT Document Available (#1047738143) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |
| 09-30-2020 | MO | MOTION TO DISMISS ACTION WITH PREJUDICE UNWARRANTED RESTRAINT OF LIBERTY; COPY DA & JUDGE WILSON Document Available (#1047291975) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |
| 10-07-2020 | MOD | MOTION TO DISMISS; COPY DA & JUDGE WILSON Document Available (#1047901989) ⬛TIFF ⬛PDF | | VALDEZ, JAMES DOUGLAS | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 10-08-2020 | CTPASS | JUDGE DAVID GUTEN: DEFENDANT REPRESENTED BY TEDDY COOPER. STATE REPRESENTED BY MORGAN MEDDERS. PRELIMINARY HEARING PASSED NO ISSUE TO 10-29-20 AT 9:00 AM ROOM 347. BOND TO REMAIN. | | VALDEZ, JAMES DOUGLAS | |
| 10-29-2020 | DISMISSED | JUDGE DAVID GUTEN: DEFENDANT NOT PRESENT, IN CUSTODY, AND REPRESENTED BY AMANDA MIMMS. STATE REPRESENTED BY MORGAN MEDDERS. CASE DISMISSED COST TO STATE, DEFENDANT CHARGED IN FEDERAL COURT. RELEASE ISSUED | 1 | VALDEZ, JAMES DOUGLAS | |
| 10-30-2020 | ABST | ABSTRACT SENT TO D.P.S. | 2 | VALDEZ, JAMES DOUGLAS | |
| 10-30-2020 | ABST | ABSTRACT SENT TO D.P.S. | 4 | VALDEZ, JAMES DOUGLAS | |
| 10-30-2020 | ABST | ABSTRACT SENT TO D.P.S. | 1 | VALDEZ, JAMES DOUGLAS | |

FP

Valdez, James D.

J-14

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY

STATE OF OKLAHOMA

Ex. 2

| | | |
|---|---|---|
| State of Oklahoma | ) | |
| Plaintiff, | ) | CF-2020-3454 |
| -VS- | ) | CF-2020-3845 |
| James Douglas Valdez | ) | Special Judge Tanya Wilson |
| Respondent, | ) | |

## MOTION TO DISMISS ACTION WITH PREJUDICE

## UNWARRANTED RESTRAINT OF LIBERTY

COMES NOW, Defendant, James Valdez, moves this court to dismiss action due to the state failing to establish probable cause and protect the defendant's rights to have the probable cause arraignment within 48-Hours after the warrantless arrest to prevent excessive restraint of liberty; the state proceeded intentionally or unintentionally with these safeguards neglected this shall result in immediate emancipation regarding Valdez liberty.

### *Statement of Facts*

- Extended restraint of liberty violated constitutional standards,
- Detectives failed to provide the pre-arrest determination for probable cause,
- The 48-Hour determination for probable cause upholds a constitutional background,
- Safeguards to establish a criminal complaint and prevent deprivation is to conduct any warrant or warrantless arrest with probable cause,
- The respondent was not arraigned to determine probable merits of cause for the warrantless arrest until a week after the 48-Hour unwarranted restraint of liberty,
- Detectives failed to uphold Fourth Amendment and Okla. Const. Art. II Sec. 30 insurance.

1

## *Statement of Case*

On 08/01/20 the state filed charges on Valdez based on a warrantless search for the case number CF-20-3454, officers that conducted the arrest failed to contact TPD and acted in "bad-faith" due to the Broken Arrow Task Force officer engaging in the search and arrest of another suspect that was with Valdez, this incident occurred in Tulsa County the Broken Arrow officer knew he had no jurisdiction to engage in such operation; the courts and arresting officers knew this was conducted in "bad-faith" and still attempted to proceed but the state proceed outside of Fourth Amendment requirements by not determining the arrest probability within 48-Hours, this lead to a (6) six day restraint of liberty which compelled Valdez to post bond without a duly arraignment to determine probable cause and set a bond; Valdez posted bond on approx. 08/06/20. Now the second restraint of liberty occurred with additional charges while Valdez was out on bond for CF-20-3454, Valdez encountered more contact with law enforcement which lead to a warrantless arrest on approx. 08/28/20 under case number CF-20-3845 Criminal charges was not filed until 09/03/20 and Valdez was not arraigned until approx. 09/04/20 approx. (7) seven days after the warrantless failing to protect the 48-Hour restraint of liberty without probable cause determination by the judge. Officers failed to meet Fourth Amendment probable cause requisites to establish the warrantless arrest, the courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Fritz did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 safeguards.*

## *Gerstein v. Pugh, 420 U.S. 103:*

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See *R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972).* Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, *e. g., 18 U. S. C. §§ 3146 (a)(2), (5).* When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the *Fourth Amendment* requires a judicial

determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

This result has historical support in the common law that has guided interpretation of the *Fourth Amendment*. See *Carroll v. United States, 267 U.S. 132, 149 (1925)*. At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. *2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736); 2 W. Hawkins, Pleas of the Crown 116-117 (4th ed. 1762)*. See also *Kurtz v. Moffitt, 115 U.S. 487, 498-499 (1885)*. The justice of the peace would "examine" the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody. *1 M. Hale, supra, at 583-586; 2 W. Hawkins, supra, at 116-119; 1 J. Stephen, History of the Criminal Law of England 233 (1883)*. The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. *2 W. Hawkins, supra, at 112-115; 1 J. Stephen, supra, at 243*; see *Ex parte Bollman, 4 Cranch, at 97-101*. This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment, see *Ex parte Bollman, supra; Ex parte Burford, 3 Cranch 448 (1806); United States v. Hamilton, 3 Dall. 17 (1795)*, and there are indications that the Framers of the *Bill of Rights* regarded it as a model for a "reasonable" seizure. See *Draper v. United States, 358 U.S., at 317-320 (DOUGLAS, J., dissenting)*

In *Albrecht v. United States, 273 U.S. 1, 5 (1927)*, the Court held that an arrest warrant issued solely upon a United States Attorney's information was invalid because the accompanying affidavits were defective. Although the Court's opinion did not explicitly state that the prosecutor's official oath could not furnish probable cause, that conclusion was implicit in the judgment that the arrest was illegal under the *Fourth Amendment*. More recently, in *Coolidge v. New Hampshire, 403 U.S. 443, 449-453 (1971)*, the Court held that a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate. We reaffirmed that principle in *Shadwick v. City of Tampa, 407 U.S. 345 (1972)*, and held that probable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution. See also *United States v. United States District Court, 407 U.S. 297, 317 (1972)*. The reason for this separation of functions was expressed by Mr. Justice Frankfurter in a similar context:

"A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication." *McNabb v. United States, 318 U.S. 332, 343 (1943)*.

In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a

judicial hearing is not prerequisite to prosecution by information. *Beck v. Washington, 369 U.S. 541, 545 (1962); Lem Woon v. Oregon, 229 U.S. 586 (1913).*

Although it may be true that the *Fourth Amendment's* "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *ante, at 125 n. 27*, this case does not involve an initial arrest, but rather the continuing incarceration of a presumptively innocent person. Accordingly, I cannot join the Court's effort to foreclose any claim that the traditional requirements of constitutional due process are applicable in the context of pretrial detention.

It is the prerogative of each State in the first instance to develop pretrial procedures that provide defendants in pretrial custody with the fair and reliable determination of probable cause for detention required by the *Constitution. Cf. Morrissey v. Brewer, 408 U.S. 471, 488.* The constitutionality of any particular method for determining probable cause can be properly decided only by evaluating a State's pretrial procedures as a whole, not by isolating a particular part of its total system. As the Court recognizes, great diversity exists among the procedures employed by the States in this aspect of their criminal justice system. *Ante, at 123-124.*

In *Ex parte Bollman*, two men charged in the Aaron Burr case were committed following an examination in the Circuit Court of the District of Columbia. They filed a petition for writ of habeas corpus in the Supreme Court. The Court, in an opinion by Mr. Chief Justice Marshall, affirmed its jurisdiction to issue habeas corpus to persons in custody by order of federal trial courts. Then, following arguments on the *Fourth Amendment* requirement of probable cause, the Court surveyed the evidence against the prisoners and held that it did not establish probable cause that they were guilty of treason. The prisoners were discharged.

Because the standards are identical, ordinarily there is no need for further investigation before the probable cause determination can be made.

"Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'" *Mallory v. United States, 354 U.S. 449, 456 (1957).*

In his concurring opinion, MR. JUSTICE STEWART objects to the Court's choice of the *Fourth Amendment* as the rationale for decision and suggests that the Court offers less procedural protection to a person in jail than it requires in certain civil cases.

Moreover, the *Fourth Amendment* probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct.

## *County of Riverside v. McLaughlin, 500 U.S. 44:*

Scalia, J., dissented, expressing the view that (1) the *Fourth Amendment* preserves the traditional protections against unlawful arrest afforded by the common law, including the rule that (a) a

4

person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can," and (b) the only element bearing on the reasonableness of delay is the arresting officer's ability to reach a magistrate who can issue the needed warrant for further detention; (2) it is thus an unreasonable seizure within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (a) for reasons unrelated to arrangement of the probable cause determination or completion of the steps incident to arrest, or (b) beyond 24 hours after the arrest, which, according to available data, is all that is needed to complete the procedures incident to arrest; and (3) combining the probable cause determination with other proceedings does not justify a delay.

*ARREST §2 > without warrant -- judicial determination of probable cause -- promptness -- > Headnote:*

A jurisdiction that provides judicial determinations of probable cause within 48 hours of a warrantless arrest will, as a general matter, comply with the requirement, under the Federal Constitution's *Fourth Amendment*, that such determinations be provided promptly, and such a jurisdiction will therefore be immune from systemic challenges to its probable cause determination procedures, as (1) a 48-hour rule accommodates the competing interests involved, whereby (a) states have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no opportunity for a prior judicial determination of probable cause, but (b) prolonged detention based on incorrect or unfounded suspicion may unjustly imperil suspects' jobs, interrupt their sources of income, and impair their family relationships; (2) the vague admonition of the common law that an arresting officer must bring a person arrested without a warrant before a judicial officer "as soon as he reasonably can" offers no support for an inflexible standard that would require a probable cause determination to be made as soon as the administrative steps incident to arrest are completed; and (3) given that it can take 36 hours to process arrested persons, a rule setting 24 hours as the outer boundary for providing probable cause determinations would compel countless jurisdictions to speed up their criminal justice mechanisms substantially, presumably by reallocating tax dollars, and this is not a situation where the Constitution compels such direct interference with local control. *(Marshall, Blackmun, Stevens, and Scalia, JJ., dissented from this holding.)*

*ARREST §2 > BAIL AND RECOGNIZANCE §6 > CRIMINAL LAW §57 > warrantless arrest -- probable cause determination -- arraignment -- > Headnote:*

Warrantless arrests are permitted under the Federal Constitution's *Fourth Amendment*, but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause; states may choose to comply with the requirement of a prompt probable cause determination in different ways, and are not constitutionally compelled to provide a probable cause hearing the moment a suspect is finished being "booked," a rule which would make it impossible to incorporate probable cause determinations into the procedure for setting bail or fixing other conditions of pretrial release; jurisdictions are constitutionally permitted to incorporate probable cause determinations into other pretrial procedures, so long as they do so promptly; the promptness requirement means that only those proceedings that arise very early in the pretrial process--such as bail hearings and arraignments--may be combined

with the probable cause determination; a jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest; thus, a county which requires arraignments to be conducted without unnecessary delay and, in any event, within 2 days of arrest, is entitled to combine probable cause determinations with arraignments.

*ARREST §2 > without warrant -- probable cause determination -- delay --  > Headnote:*

The Federal Constitution's *Fourth Amendment* permits a reasonable postponement of a probable cause determination following a warrantless arrest while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system; but flexibility in this matter has its limits, and a state has no legitimate interest in detaining for an extended period individuals who have been arrested without probable cause.

*ARREST §2  >  CRIMINAL LAW §57  >  EVIDENCE §419 > probable cause for warrantless arrest -- judicial determination -- promptness -- burden of proof --  > Headnote:*

Although a jurisdiction that provides judicial determinations of probable cause for warrantless arrests within 48 hours of such arrests will generally comply with the promptness requirements of the Federal Constitution's *Fourth Amendment*, this does not mean that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours, as such a hearing may nonetheless violate the *Fourth Amendment* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably; examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake, but courts must allow a substantial degree of flexibility in evaluating whether the delay in a particular case is unreasonable; where an arrested individual does not receive a probable cause determination within 48 hours, the individual does not bear the burden of proving an unreasonable delay, but rather the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance; the fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance, nor do intervening weekends.

Respondent *McLaughlin* brought a class action seeking injunctive and declaratory relief under *42 U. S. C. § 1983*, alleging that petitioner County of Riverside (County) violated the holding of *Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854*, by failing to provide "prompt" judicial determinations of probable cause to persons who, like himself, were arrested without a warrant. The County combines such determinations with arraignment procedures which, under County policy, must be conducted within two days of arrest, excluding weekends and holidays. The County moved to dismiss the complaint, asserting that *McLaughlin* lacked standing to bring the suit because the time for providing him a "prompt" probable cause determination had already passed and he had failed to show, as required by *Los Angeles v. Lyons, 461 U.S. 95, 75 L. Ed. 2d 675, 103 S. Ct. 1660*, that he would again be subject to the allegedly unconstitutional conduct. The District Court never explicitly ruled on the motion to dismiss, but accepted for filing a second amended complaint -- the operative pleading here -- which named respondents *James*, *Simon*, and *Hyde* as additional individual plaintiffs and class representatives, and alleged that each of them had been arrested without a warrant, had not received a prompt probable cause

hearing, and was still in custody. The court granted class certification and subsequently issued a preliminary injunction requiring that all persons arrested by the County without a warrant be provided probable cause determinations within 36 hours of arrest, except in exigent circumstances. The Court of Appeals affirmed, rejecting the County's Lyons-based standing argument and ruling on the merits that the County's practice was not in accord with Gerstein's promptness requirement because no more than 36 hours were needed to complete the administrative steps incident to arrest.

The County's current policy and practice do not comport fully with *Gerstein's* requirement of a "prompt" probable cause determination. Pp. 52-59.

Although a hearing within 48 hours may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably, courts evaluating the reasonableness of a delay must allow a substantial degree of flexibility, taking into account the practical realities of pretrial procedures. Where an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, which cannot include intervening weekends or the fact that in a particular case it may take longer to consolidate pretrial proceedings. Pp. 55-58.

In *Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975)*, this Court held that the *Fourth Amendment* requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. This case requires us to define what is "prompt" under *Gerstein.*

The court then proceeded to the merits and determined that the County's policy of providing probable cause determinations at arraignment within 48 hours was "not in accord with *Gerstein's* requirement of a determination 'promptly after arrest'" because no more than 36 hours were needed "to complete the administrative steps incident to arrest." *Id., at 1278.*

On the other hand, prolonged detention based on incorrect or unfounded suspicion may unjustly "imperil [a] suspect's job, interrupt his source of income, and impair his family relationships." *Id., at 114.* We sought to balance these competing concerns by holding that States "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id., at 125 (emphasis added).*

Our task in this case is to articulate more clearly the boundaries of what is permissible under the *Fourth Amendment*. Although we hesitate to announce that the *Constitution* compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges.

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. One way to do so is to provide a judicial determination of probable cause immediately upon completing the administrative steps incident to arrest -- i. e., as soon as the suspect has been booked, photographed, and fingerprinted As JUSTICE SCALIA explains, several States, laudably, have adopted this approach. The Constitution does not compel so rigid a schedule, however. Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly. This necessarily means that only certain proceedings are candidates for combination. Only those proceedings that arise very early in the pretrial process -- such as bail hearings and arraignments -- may be chosen. Even then, every effort must be made to expedite the combined proceedings. See *420 U.S. at 124.*

One of those -- one of the most important of those -- was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can." *2 M. Hale, Pleas of the Crown 95, n.13 (1st Am. ed. 1847).* See also *4 W. Blackstone, Commentaries *289, *293; Wright v. Court, 107 Eng. Rep. 1182 (K. B. 1825)* ("It is the duty of a person arresting any one on suspicion of felony to take him before a justice as soon as he reasonably can"); *1 R. Burn, Justice of the Peace 276-277 (1837)* ("When a constable arrests a party for treason or felony, he must take him before a magistrate to be examined as soon as he reasonably can") (emphasis omitted). The practice in the United States was the same. See, *e. g., 5 Am. Jur. 2d, Arrest §§ 76, 77 (1962); Venable v. Huddy, 77 N.J.L. 351, 72 A. 10, 11 (1909); Atchison, T. & S. F. R. Co. v. Hinsdell, 76 Kan. 74, 76, 90 P. 800, 801 (1907); Ocean S. S. Co. v. Williams, 69 Ga. 251, 262 (1883); Johnson v. Mayor and City Council of Americus, 46 Ga. 80, 86-87 (1872); Low v. Evans, 16 Ind. 486, 489 (1861); Tubbs v. Tukey, 57 Mass. 438, 440 (1849) (warrant); Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 254 (1940). Cf. Pepper v. Mayes, 81 Ky. 673 (1884).* It was clear, moreover, that the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate who could issue the needed warrant for further detention. *5 Am. Jur. 2d, Arrest, supra, §§ 76, 77; 1 Restatement of Torts § 134, Comment b (1934); Keefe v. Hart, 213 Mass.*

*476, 482, 100 N.E. 558, 559 (1913); Leger v. Warren, 62 Ohio St. 500, 57 N.E. 506, 508 (Ohio 1900); Burk v. Howley, 179 Pa. 539, 551, 36 A. 327, 329 (1897); Kirk & Son v. Garrett, 84 Md. 383, 405, 35 A. 1089, 1091 (1896); Simmons v. Vandyke, 138 Ind. 380, 384, 37 N.E. 973, 974 (1894) (dictum); Ocean S. S. Co. v. Williams, supra, at 263; Hayes v. Mitchell, 69 Ala. 452, 455 (1881); Kenerson v. Bacon, 41 Vt. 573, 577 (1869); Green v. Kennedy, 48 N.Y. 653, 654 (1871); Schneider v. McLane, 3 Keyes 568 (NY App. 1867); Annot., 51 L. R. A. 216 (1901). Cf. Wheeler v. Nesbitt, 65 U.S. 544, 24 HOW 544, 552, 16 L. Ed. 765 (1860). Any detention beyond the period within which a warrant could have been obtained rendered the officer liable for false imprisonment. See, e. g., Twilley v. Perkins, 77 Md. 252, 265, 26 A. 286, 289 [\*\*1673] (1893); Wiggins v. Norton, 83 Ga. 148, 152, 9 S.E. 607, 608-609 (1889); Brock v. Stimson, 108 Mass. 520 (1871); Annot., 98 A. L. R. 2d 966 (1964).*

Since the Court's opinion hangs so much upon Gerstein, it is worth quoting the allegedly relevant passage in its entirety.

"Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, . . . or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. In some States, existing procedures may satisfy  the requirement of the *Fourth Amendment*. Others may require only minor adjustment, such as acceleration of existing preliminary hearings. Current proposals for criminal procedure reform suggest other ways of testing probable cause for detention. Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *420 U.S. at 123-125 (footnotes omitted; emphasis added).*

The Court's holding today rests upon the statement that "we recognize the desirability of flexibility and experimentation." But in its context that statement plainly refers to the nature of the hearing and not to its timing. That the timing is a given and a constant is plain from the italicized phrases, especially that which concludes the relevant passage. The timing is specifically addressed in the previously quoted passage of the opinion, which makes clear that "promptly after arrest" means upon completion of the "administrative steps incident to arrest."

Of course even if the implication of the dictum in *Gerstein* were what the Court says, that would be poor reason for keeping a wrongfully arrested citizen in jail contrary to the clear dictates of the *Fourth Amendment*. What is most revealing of the frailty of today's opinion is that it relies upon nothing but that implication from a dictum, plus its own (quite irrefutable because entirely value laden) "balancing" of the competing demands of the individual and the State. With respect to the point at issue here, different times and different places -- even highly liberal times and places -- have struck that balance in different ways. Some Western democracies currently permit

9

the executive a period of detention  without impartially adjudicated cause. In England, for example, the *Prevention of Terrorism Act 1989, §§ 14(4), 5, permits suspects to be held without presentation  and without charge for seven days. 12 Halsbury's Stat. 1294 (4th ed. 1989).* It was the purpose of the Fourth Amendment to put this matter beyond time, place, and judicial predilection, incorporating the traditional common-law guarantees against unlawful arrest. The Court says not a word about these guarantees, and they are determinative. *Gerstein's* approval of a "brief period" of delay to accomplish "administrative steps incident to an arrest" is already a questionable extension of the traditional formulation, though it probably has little practical effect and can perhaps be justified on de minimis grounds. To expand Gerstein, however, into an authorization for 48-hour detention related neither to the obtaining of a magistrate nor the administrative "completion" of the arrest seems to me utterly unjustified. Mr. *McLaughlin* was entitled to have a prompt impartial determination that there was reason to deprive him of his liberty -- not according to a schedule that suits the State's convenience in piggybacking various proceedings, but as soon as his arrest was completed and the magistrate could be procured.

I have finished discussing what I consider the principal question in this case, which is what factors determine whether the post-arrest determination of probable cause has been (as the *Fourth Amendment* requires) "reasonably prompt." The Court and I both accept two of those factors, completion of the administrative steps incident to arrest and arranging for a magistrate's probable-cause determination. Since we disagree, however, upon a third factor -- the Court believing, as I do not, that "combining" the determination with other proceedings justifies a delay -- we necessarily disagree as well on the subsequent question, which can be described as the question of the absolute time limit. Any determinant of "reasonable promptness" that is within the control of the State (as the availability of the magistrate, the personnel and facilities for completing administrative procedures incident to arrest, and the timing of "combined procedures" all are) must be restricted by some outer time limit, or else the promptness guarantee would be worthless. If, for example, it took a full year to obtain a probable-cause determination in California because only a single magistrate had been authorized to perform that function throughout the State, the hearing would assuredly not qualify as "reasonably prompt." At some point, legitimate reasons for delay become illegitimate.

I do not know how the Court calculated its outer limit of 48 hours. I must confess, however, that I do not know how I would do so either, if I thought that one justification for delay could be the State's "desire to combine." There are no standards for "combination," and as we acknowledged in *Gerstein* the various procedures that might be combined "vary widely" from State to State. *420 U.S. at 123*. So as far as I can discern (though I cannot pretend to be able to do better), the Court simply decided that, given the administrative convenience of "combining," it is not so bad for an utterly innocent person to wait 48 hours in jail before being released.

With one exception, no federal court considering the question has regarded 24 hours as an inadequate amount of time to complete arrest procedures, and with the same exception every court actually setting a limit for a probable-cause determination based on those procedures has selected 24 hours. (The exception would not count Sunday within the 24-hour limit.) See *Bernard v. Palo Alto, 699 F.2d at 1025; McGill v. Parsons, 532 F.2d 484, 485 (CA5 1976); Sanders v. Houston, 543 F. Supp. at 701-703; Lively v. Cullinane, 451 F. Supp. at 1003-1004. Cf. Dommer v. Hatcher, 427 F. Supp. 1040, 1046 (ND Ind. 1975) (24-hour maximum; 48 if Sunday included), rev'd in part, 653 F.2d 289 (CA7 1981).* See *also Gramenos v. Jewel*

*Companies, Inc.. 797 F.2d at 437 (four hours "requires explanation")*; Brandes, *Post-Arrest Detention and the Fourth Amendment*: Refining the Standard of *Gerstein v. Pugh, 22 Colum. J. L. & Soc. Prob. 445, 474-475 (1989)*. Federal courts have reached a similar conclusion in applying *Federal Rule of Criminal Procedure 5(a)*, which requires presentment before a federal magistrate "without unnecessary delay." See, *e. g., Thomas, The Poisoned Fruit of Pretrial Detention, 61 N. Y. U. L. Rev. 413, 450, n.238 (1986) (citing cases)*. And state courts have similarly applied a 24-hour limit under state statutes requiring presentment without "unreasonable delay." New York, for example, has concluded that no more than 24 hours is necessary from arrest to arraignment, *People ex rel. Maxian v. Brown, 164 A.D.2d at 62-64, 561 N.Y.S.2d at 421-422*. Twenty-nine States have statutes similar to New York's, which require either presentment or arraignment "without unnecessary delay" or "forthwith"; eight States explicitly require presentment or arraignment within 24 hours; and only seven States have statutes explicitly permitting a period longer than 24 hours. *Brandes*, supra, *at 478, n.230*. Since the States requiring a probable-cause hearing within 24 hours include both New York and Alaska, it is unlikely that circumstances of population or geography demand a longer period. Twenty-four hours is consistent with the *American Law Institute's Model Code. ALI, Model Code of Pre-Arraignment Procedure § 310.1 (1975)*. And while the *American Bar Association* in its proposed rules of criminal procedure initially required that presentment simply be made "without unnecessary delay," it has recently concluded that no more than six hours should be required, except at night. *Uniform Rules of Criminal Procedure, 10 U. L. A. App., Criminal Justice Standard 10-4.1 (Spec. Pamph. 1987)*.

A few weeks before issuance of today's opinion there appeared in the Washington Post the story of protracted litigation arising from the arrest of a student who entered a restaurant in Charlottesville, Virginia, one evening, to look for some friends. Failing to find them, he tried to leave -- but refused to pay a $ 5 fee (required by the restaurant's posted rules) for failing to return a red tab he had been issued to keep track of his orders. According to the story, he "was taken by police to the Charlottesville jail" at the restaurant's request. "There, a magistrate refused to issue an arrest warrant," and he was released. *Washington Post, Apr. 29, 1991, p. 1.* That is how it used to be; but not, according to today's decision, how it must be in the future. If the *Fourth Amendment* meant then what the Court says it does now, the student could lawfully have been held for as long as it would have taken to arrange for his arraignment, up to a maximum of 48 hours.

## *Extended Restraint of Liberty Over 48 Hours:*

If the government wishes to detain an arrested suspect pending further proceedings (rather than let the suspect go in the meantime), the *Fourth Amendment* adds an additional requirement to the government's tasks. In *Gerstein v. Pugh, 420 U.S. 103, 114, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975)*, the Supreme Court held that "the *Fourth Amendment* requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." When an arrest has been made subject to a warrant, a judicial determination of probable cause has already been made as a prerequisite to obtaining the arrest warrant. In the case of warrantless arrests, however, there has been no pre-arrest probable cause determination by a judicial officer. In such cases, the Court has held that to detain the suspect pending further proceedings, the government

must obtain--within 48 hours of the arrest--a probable cause determination by a judicial officer. *County of Riverside v. McLaughlin, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991).* the courts and arresting officers knew this was conducted in "bad-faith" and still attempted to proceed but the state proceed outside of Fourth Amendment requirements by not determining probability within 48-Hours, this lead to a (6) six day restraint of liberty which compelled Valdez to post bond without a duly arraignment to determine probable cause and set a bond; Valdez posted bond on approx. 08/06/20. Now the second restraint of liberty occurred with additional charges while Valdez was out on bond for CF-20-3454, Valdez encountered more contact with law enforcement which lead to a warrantless arrest on approx. 08/28/20 under case number CF-20-3845 Criminal charges was not filed until 09/03/20 and Valdez was not arraigned until approx. 09/04/20 approx. (7) seven days after the warrantless failing to protect the 48-Hour restraint of liberty without probable cause determination by the judge. Officers failed to meet Fourth Amendment probable cause requisites to establish the warrantless arrest, the courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Fritz did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 safeguards.* Investigating officers went under Oklahoma provisions during this arrest because the officers did not see Fritz commit or attempt a public offense in the officers presence. See *22 Okl. St. § 196.*

Under both federal and state constitutional law, all warrantless seizures are presumptively unreasonable. *U.S. Const. amends. IV. XIV; Katz v. United States,389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Okla. Const. art. II, § 30; Lucas v. State, 704 P.2d 1141, 1143 (Okl.Cr. 1985).* An arrest is a "seizure" within the constitutional prohibition against unreasonable seizures. See *Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).* When a warrantless arrest is challenged, the State carries the burden of proving that the arrest was lawful. *Leigh v. State. 587 P.2d 1379, 1383 (Okl.Cr. 1978); Greene v. State, 508 P.2d 1095, 1100 (Okl.Cr.App. 1973). (Citing Tomlin v. State of Oklahoma, 869 P.3d 334 (1994).*

Defendant contends that, because the Constitution requires a probable cause determination when the government seeks to detain a warrantless arrestee pending further proceedings, the Rules that deal with probable cause to arrest must govern both situations. Defendant seeks support for his position in the Supreme Court's decision in *Giordenello v. United States, 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958).* In *Giordenello,* the Court held that the Federal Rules of Criminal Procedure:

must be read in light of the constitutional requirements they implement. The language of the *Fourth Amendment* . . . of course applies to arrest as well as search warrants. The protection afforded by these Rules, when they are viewed against their constitutional background, is that the inferences from the facts which lead to the complaint ". . . be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States, 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 [(1948)].* The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the "probable cause" required to support a warrant

exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause.

The purpose of a complaint is to ensure that no suspect is arrested without probable cause. *Id. at 485-86.* The purpose of a *McLaughlin* determination is to ensure that no warrantless arrestee is detained, pending further proceedings, without probable cause. *500 U.S. at 53.*

The Supreme Court held in *Gerstein* that the constitutional standard for probable cause is the same whether the government seeks to detain an arrestee pending further proceedings or to obtain an arrest warrant. *420 U.S. at 120.* Accordingly, a probable cause determination for purposes of detention pending further proceedings must be supported by an oath or affirmation. Although a complaint establishing probable cause might satisfy both purposes, the defense found statutory basis in *22 Okl. St. § 749, 22 Okl. St. § 3007,* and *12 Okl. St. § 2803(8)(A)(B)(C)(D)(E)* to establish that it is impermissible for the government to proceed in the pre-arrest probable cause determination, failing to uphold the legislative policies listed to support probable cause.

The state has a 48-hour window under *McLaughlin* to determine the warrantless arrest is supported by probable cause and the arresting officer also has to satisfy the *Gerstein* requirement which is based upon a probable cause determination for purposes of detention pending further proceedings that must be supported by an oath or affirmation. In *Gerstein* the Supreme Court held that the probable cause standard is the same procedure to detain an arrestee pending further proceedings or to obtain an arrest warrant, the defense has numerous cases that explain the importance of sworn depositions, affidavits, and oral testimony to satisfy probable cause; officers used hearsay that lacked personal knowledge when issuing such complaint to justify the warrantless arrest for Valdez, officers never obtained sworn depositions, affidavits, or testimony to support the probable cause determination. Arresting officers held Valdez for (6) six days for the matter of CF-20-3454 compelling Valdez to post bond without arraignment and approx. (7) seven days in the matter of CF-20-3845 before a probability arraignment was provided, this failed to satisfy the *McLaughlin* and *Gerstein* standard because it was more than (48) hours and officers filed hearsay information which does not satisfy the probable cause determination, the following cases and statutory policies explain the arresting officers and prosecution lacked probable cause under the *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 rights:*

If arresting officers consider this warrantless arrest a rule of practice absent exigent circumstances it cannot rely on good-faith due to it constituting corruption. Any excuse prosecutors or arresting officers attempt to conspire outside of constitutional standards will never prevail over Valdez *Fourth Amendment* constitutional rights. Further, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." See *Gouled v. United States, 255 U.S. 298, 313 41 S. Ct. 261, 65 L. Ed 647;* quoted and approved in *Agnello v. United States, 269 U.S. 20, 34, 35, 46 S. Ct. 4, 7, 70 L.Ed. 145.*

WHEREFORE, the defendant, respectfully request that this court dismiss complaint with prejudice that exceeded past the constitutional standards for extended restraint and due to the action being without sufficient requirements to establish cause for warrantless arrest without a duly probability arraignment.

### CERTIFICATE OF MAILING

This is to certify that on this____day of_____2020, a true and correct copy of the above foregoing motion was mailed to the county court clerk and the affiant respectfully request that additional copies are to be sent to district judge and D.A. within and for Tulsa County, State of Oklahoma.

_____

Mr. James D. Valdez

300 N. Denver Ave.

Tulsa, OK 74103

*Ex. 2*

# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma | ) | |
| Plaintiff, | ) | CF-2020-3454 |
| -VS- | ) | CF-2020-3845 |
| James Douglas Valdez | ) | Special Judge Tanya Wilson |
| Respondent, | ) | |

## MOTION TO DISMISS ACTION W/ PREJUDICE
### *UNWARRANTED DISCRETION*

COMES NOW, Respondent, James Douglas Valdez, moves this court to declare destruction of the insufficient action, due to public officials restraining and depriving the respondent for further detention without a post arrest warrant to protect the legality of the warrantless arrest and jurisdiction to deprive liberty with further detention, public officials committed default conduct failing to issue a warrant after the initial arrest utilizing legislations commands with corrupt discretion which is an evil collusion to compel unwarranted guilt contracts.

### *Statement of Facts*

- The adversarial process would be prejudice if public officials are not held to the same standards, rules, procedures, laws, and requirements applied to others,
- Default is a failure to uphold duties under professional contracts,
- Public officials initiated a breach of insurance when they committed an omission to Legislative policy,
- Public officials attempted sanctions to hinder respondents Due Process and Equal Protection insurance,
- The negligence actually intruded to a level of dismissal by default from the breach of Legislations insurances and safeguards from unwarranted deprivation,
- Public officials deprived respondent outside of sovereign commandments,
- Officials attempted to conspire guilt contracts utilizing unwarranted fiction upon corrupt discretion,
- The state failed to formulate standards of a post facto warrantless arrest.

1

## *Statement of Case*

On 08/01/20 the state filed charges on Valdez based on a warrantless search & arrest for the case number CF-20-3454, officers that conducted the arrest failed to contact TPD and acted in "bad-faith" due to the Broken Arrow Task Force officer engaging in the search and arrest of Valdez knowingly outside of the city of Broken Arrow jurisdiction, this incident occurred in the City of Tulsa and the Broken Arrow officer knew he had no jurisdiction to engage in such operation; the courts and arresting officers knew this was conducted in "bad-faith" and still attempted to proceed but the state proceeded outside of Fourth Amendment requirements by not determining probability within 48-Hours, this lead to a (6) six day restraint of liberty which compelled Valdez to post bond without a duly arraignment to determine probable cause and set a bond; Valdez posted bond on approx. 08/06/20. Now the second restraint of liberty occurred with additional charges while Valdez was out on bond for CF-20-3454, Valdez encountered more contact with law enforcement which lead to a warrantless arrest on approx. 08/28/20 under case number CF-20-3845 Criminal charges was not filed until 09/03/20 and Valdez was not arraigned until approx. 09/04/20 approx. (7) seven days after the warrantless arrest failing to protect the 48-Hour restraint of liberty without the probable cause determination by the judge. Officers failed to meet Fourth Amendment probable cause requisites to establish the warrantless arrest, the courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Valdez did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment and Okla. Const. Art. II Sec. 30 safeguards.* The state to protect the process to deprive Valdez for further detention when it never issued and secured sufficient probable cause requirements, due to public officials failing to issue the post arrest warrant for further detention.

## *The State Committed A Deprivation Default Neglecting Legislation Insurance and Commandments:*

The courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Valdez did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment and Okla. Const. Art. II Sec. 30 safeguards* insurance to prevent unwarranted deprivation constituting Illegal seizures of the respondent person. Due to the state public officials such as the

arresting officer, prosecution, and arraignment judge committing such sanctions defaulting legislators orders that strictly govern the court room and excludes the judges, police, and prosecutions discretion to rebuttal or objections. Ultimately the statutory commandment, exposed the state committed a default sanction that deprived Mr. James Valdez producing a fictional seizure, because the arresting officer, prosecution, and detached public officials ignored commandments that govern the court room in Oklahoma.

*22 Okl. St. § 171. Issuance of Arrest Warrant upon Verified Complaint*

*When a complaint, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must, if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest.*

**Black's Law Definition**

Must – order or command;

It's clear public officers had a commandment from legislators to get a warrant before and after any initial arrest to secure the potential threat of unwarranted restraint for further detention and the proper administrative steps to protect such process.

The policy *22 Okl. St. § 171* used the word "must" and the weight it holds, in a court of law, it supersedes over all discretion of judges when used in the context of any sovereign policy of Oklahoma; the legislators choice of word "must" is highly significant. Usually in the court of law given the meaning of "must", and is interpreted as implying a command or mandate. *Sneed v. Sneed, 585 P. 2d 1363 (Okl. St. 1978)*. Its invariable signification is the exclusion of the idea of discretion, it is official that such commandment sanctioned from the respondents rights against further detention without sufficient probable cause administrative steps to deprive.

In our research we have found no statute in the same language as ours. "Unprofessional conduct or other sufficient cause" seems to be the common ground for revocation of certificates in the accountancy acts of other states. See *Wangerin v. Wisconsin State Board of Accountancy, 223 Wis. 179, 270 N.W. 57, 58.* Nowhere has such description been held inadequate to the extent of invalidating the law.

Thus it may be readily be seen that omissions or defaults by an public official in the capacity of a judge, police, and district attorney, who proceeded in further detention without prerequisite warrant insurance after the warrantless arrest is as great of a wrong as if public officials actively and purposely continued to restrain Mr. James Valdez without a warrant for approx. (1) One month, the public officials is charged with knowledge to protect *22 Okl. St. § 171* safeguards following a warrantless

3

arrest, knowingly compelling further detention without proper administrative steps to satisfy *Fourth Amendment* and *Okla. Const. Art. II Sec. 30* insurance, without the must needed legislative insurance public officials lack jurisdiction to proceed in such complaint and at this point the action is considered tainted. "The acts or defaults" pertain to the profession, occur in its practice and constitute a breach of duty or contract on the part of the public officials.

This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment, see *Ex parte Bollman, supra; Ex parte Burford, 3 Cranch 448 (1806); United States v. Hamilton, 3 Dall. 17 (1795)*, and there are indications that the Framers of the *Bill of Rights* regarded it as a model for a "reasonable" seizure. See *Draper v. United States, 358 U.S., at 317-320 (DOUGLAS, J., dissenting)*

In *Albrecht v. United States, 273 U.S. 1, 5 (1927)*, the Court held that an arrest warrant issued solely upon a United States Attorney's information was invalid because the accompanying affidavits were defective. Although the Court's opinion did not explicitly state that the prosecutor's official oath could not furnish probable cause, that conclusion was implicit in the judgment that the arrest was illegal under the *Fourth Amendment*. More recently, in *Coolidge v. New Hampshire, 403 U.S. 443, 449-453 (1971)*, the Court held that a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate. We reaffirmed that principle in *Shadwick v. City of Tampa, 407 U.S. 345 (1972)*, and held that probable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution. See also *United States v. United States District Court, 407 U.S. 297, 317 (1972)*. The reason for this separation of functions was expressed by Mr. Justice Frankfurter in a similar context:

"A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication." *McNabb v. United States, 318 U.S. 332, 343 (1943)*.

## *Hilkert v. Canning, (1941):*

"Guilty of any breach of duty or default commandments is discreditable to the profession" (our section 67-605, supra), when analyzed, does inform the prosecutor that it has orders to uphold protection against unwarranted deprivation to Mr. James Valdez liberty, the state had a commandment to issue such warrant to proceed in further detention and failed to follow the much needed administrative step following any arrest and these public officials is guilty of neglecting statutory insurance which shall result in default judgement in prosperity of Mr. James Valdez. The policy neglected by prosecution showed a breach of duty and exposes true etymology of "guilty," that is, that he is "responsible for delinquency and failing to perform the obligation to protect legislative safeguards that prevent unwarranted deprivation without sufficient cause and failing to issue a warrant of arrest before and

4

after the initial arrest, either route public official s determine the warrant is compelled under *22 Okl. St. § 171*; the much needed warrant must be pursued after the initial warrantless arrest. The connotation of the word "guilty" is evil, wrongdoing or culpability and when used in connection with "act or default" it means guilty of a wrong or evil act, or a default in or omission of a contract duty of such a character and nature as to bring discredit upon the profession of public officials.

The official prima facie commandment under *22 Okl. St. § 171* for public officials acing in the capacity of a district attorney, arresting officer, and arraignment judge, is governed to issue warrants when a verified complaint is filed, the insurance legislators enforce, compels adjudicating officials to protect the procedural prerequisite, when determining further detention post facto of the warrantless arrest by committing such citizen to a warrant, prosecutors holding Mr. James Valdez for approx. (1) month on prosecutions filed information is not sufficient probable cause therefore Mr. James Valdez confinement is therefore illegal under constitutional and statutory scrutiny.

In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. *Beck v. Washington, 369 U.S. 541, 545 (1962); Lem Woon v. Oregon, 229 U.S. 586 (1913).*

*Leger v. Warren, (1900):*

Syllabus
1. A person who has been arrested without a warrant cannot lawfully be held in custody for any longer period than is reasonably necessary to obtain a legal warrant for his detention. Where he is held for a longer period without such writ or other authority from a competent court, he has a right of action for false imprisonment against the officer or person who made the arrest and those by whom he has been so unlawfully held in custody.

2. In such an action it is not a defense for the officer who made the arrest that he acted under orders from a superior officer. By the failure to procure the necessary warrant or authority for the prisoner's detention, the imprisonment becomes unlawful from the beginning, and all concerned in it are equally liable.

The following are the material parts of the court's charge, of which the plaintiffs in error complain: "It was the duty of the defendants, whether they caused the arrest and imprisonment, or made the arrest and imprisonment, to carry the plaintiff without unreasonable delay before a magistrate of lawful competency for that purpose, to accuse him there according to the forms of law, and obtain the necessary magisterial sanction for any further detention of him. The defendants, making the defense here (I mean all the defendants except the sureties), did not comply with the command of the law, which required them to take him before a magistrate and

obtain a warrant for his arrest. They have not shown any lawful reason for omitting to do this. He was detained in prison an unreasonable time without the filing of an affidavit and the procuring of a warrant. Their failure to comply with this law, made them trespassers from the beginning of the arrest. The permission which the law gave them to arrest and imprison him originally because there was reasonable cause for it, without first procuring a warrant, filing an affidavit and procuring a warrant, was given to them on the condition that they would not detain him longer than was reasonably necessary to enable an affidavit to be filed and a warrant to be procured. Not having complied with that condition, the fact that he was arrested in the (first instance for reasonable cause is not even a colorable defense). Three of these defendants were subordinate officers of the superintendent of police. They did what they did pursuant to orders given by one who had a right to command, presumably. That may, as it ought to, make you feel that they ought not, in a moral sense, be held responsible in damages. But the orders of a superior, or of one who had a right to command them, is not a legal reason for their omission to comply with the law which required them, in a reasonable time, to file an affidavit and procure a warrant. The court having this conception of the law applicable to the case, there is nothing for you to do but to assess the damages." It was shown on the trial, that the plaintiff was arrested by the defendant officers without warrant, as alleged in the petition, and was imprisoned after such arrest for a period of more than five days, without any warrant for his detention, and without any charge having been made against him before any competent tribunal, or opportunity allowed him for a trial; that during his imprisonment he frequently demanded to be informed of the nature of the charge on which he was detained, and to be taken before a proper court for a hearing thereon; and that, at the end of the period named, when he was discharged from prison, no complaint had been filed against him, nor trial allowed him. These facts were not disputed. The evidence of the defense was directed entirely to the establishment of good cause for the arrest, and to the subject of damages. There was no impropriety, therefore, in the court treating as undisputed, the facts above stated and no complaint is urged here on that account. The objection made, is to that part of the charge by which the jury were instructed, in substance, that though the defendants making the arrest or causing it to be made, had good cause therefor, that did not justify the imprisonment of the plaintiff thereunder for a longer period than was reasonably necessary to enable the defendants to obtain a warrant, or authority from some competent tribunal, for his further detention; and, that his continued imprisonment without such warrant or authority, rendered them liable as wrongdoers from the beginning, leaving only the question of damages for the consideration of the jury. In this charge we think there

Prior to the action for mandates, the remedy for breach of warranty was an action on the case for deceit. (Ames' Lectures on Legal History [1913], p. 136.)
Violation of a duty owing to another is a wrongful act; breach of contract involving violation of duty may be likewise a wrongful act.

One of those -- one of the most important of those -- was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can." *2 M. Hale, Pleas of the Crown 95, n.13 (1st Am. ed. 1847).* See also *4 W. Blackstone, Commentaries*

*289, *293; Wright v. Court, 107 Eng. Rep. 1182 (K. B. 1825) ("It is the duty of a person arresting any one on suspicion of felony to take him before a justice as soon as he reasonably can"); 1 R. Burn, Justice of the Peace 276-277 (1837) ("When a constable arrests a party for treason or felony, he must take him before a magistrate to be examined as soon as he reasonably can") (emphasis omitted). The practice in the United States was the same. See, e. g., 5 Am. Jur. 2d, Arrest §§ 76, 77 (1962); Venable v. Huddy, 77 N.J.L. 351, 72 A. 10, 11 (1909); Atchison, T. & S. F. R. Co. v. Hinsdell, 76 Kan. 74, 76, 90 P. 800, 801 (1907); Ocean S. S. Co. v. Williams, 69 Ga. 251, 262 (1883); Johnson v. Mayor and City Council of Americus, 46 Ga. 80, 86-87 (1872); Low v. Evans, 16 Ind. 486, 489 (1861); Tubbs v. Tukey, 57 Mass. 438, 440 (1849) (warrant); Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 254 (1940). Cf. Pepper v. Mayes, 81 Ky. 673 (1884). It was clear, moreover, that the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate who could issue the needed warrant for further detention. 5 Am. Jur. 2d, Arrest, supra, §§ 76, 77; 1 Restatement of Torts § 134, Comment b (1934); Keefe v. Hart, 213 Mass. 476, 482, 100 N.E. 558, 559 (1913); Leger v. Warren, 62 Ohio St. 500, 57 N.E. 506, 508 (Ohio 1900); Burk v. Howley, 179 Pa. 539, 551, 36 A. 327, 329 (1897); Kirk & Son v. Garrett, 84 Md. 383, 405, 35 A. 1089, 1091 (1896); Simmons v. Vandyke, 138 Ind. 380, 384, 37 N.E. 973, 974 (1894) (dictum); Ocean S. S. Co. v. Williams, supra, at 263; Hayes v. Mitchell, 69 Ala. 452, 455 (1881); Kenerson v. Bacon, 41 Vt. 573, 577 (1869); Green v. Kennedy, 48 N.Y. 653, 654 (1871); Schneider v. McLane, 3 Keyes 568 (NY App. 1867); Annot., 51 L. R. A. 216 (1901). Cf. Wheeler v. Nesbitt, 65 U.S. 544, 24 HOW 544, 552, 16 L. Ed. 765 (1860). Any detention beyond the period within which a warrant could have been obtained rendered the officer liable for false imprisonment. See, e. g., Twilley v. Perkins, 77 Md. 252, 265, 26 A. 286, 289 [**1673] (1893); Wiggins v. Norton, 83 Ga. 148, 152, 9 S.E. 607, 608-609 (1889); Brock v. Stimson, 108 Mass. 520 (1871); Annot., 98 A. L. R. 2d 966 (1964).

_51 Okl. St. § 93. Official Misconduct Defined_

Official misconduct within the meaning of this act is hereby defined to be:

1.  Any willful failure or neglect to diligently and faithfully perform any duty enjoined upon such officer by the laws of this state.

In our own court the breach of the implied warranty is defined as a wrongful act (Ryan v. Progressive Grocery Stores, Inc., 255 N.Y. 388, 395). Bouvier (Law Dictionary Vol. 1) defines "default" as "non-performance of a duty, whether arising under a contract or otherwise," By common understanding a breach of contract constitutes a default.

_51 Okl. St. § 152(7)(12). Definitions_

**7.** *"Employee"* means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis.

**a.** Employee also includes:

**(1)** all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor,

**12.** *"Scope of employment"* means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

### *Black's Law Fifth Edition Definition(s)*

Corruption – An act done with an intent to give some advantage inconsistent with official duty and the rights of others.

Fraud – An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.

Legal Right – Natural rights, rights existing as result of contract, and rights created or recognized by law.

Sanction – A coercive measure that results from failure to comply with a law, rule, or order.

There are times when uncertain words are to be wrought into consistency and unity with a Legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' *(Per Holmes, Circuit Justice, in Johnson v. United States, 163 Fed. 30, 32. Cf. Gooch v. Oregon Short Line R. Co., 258 U.S. 22, 24; South & Central American Commercial Co. v. Panama R. Co., 237 N.Y. 287, 291; 142 N.E.)* Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has has its bad day. *(The Arizona v. Anelich, Supra; Cortes v. Baltimore Insular Line, Supra; Warner v. Goltra, 293 U.S. 155.)*"

WHEREFORE, the defendant, respectfully request that this court dismiss complaint with prejudice that exceeded past the constitutional standards for extended restraint and due to the action being without sufficient requirements to establish cause for warrantless arrest without a duly probability arraignment.

### CERTIFICATE OF MAILING

This is to certify that on this____day of_____2020, a true and correct copy of the above foregoing motion was mailed to the county court clerk and the affiant respectfully request that additional copies are to be sent to district judge and D.A. within and for Tulsa County, State of Oklahoma.

_____

Mr. James D. Valdez

300 N. Denver Ave.

Tulsa, OK 74103

# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY

# STATE OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma | ) | |
| Plaintiff, | ) | CF-2020-3454 |
| -VS- | ) | CF-2020-3845 |
| James Douglas Valdez | ) | Special Judge Tanya Wilson |
| Respondent, | ) | |

## MOTION TO DISMISS ACTION WITH PREJUDICE

## UNWARRANTED RESTRAINT OF LIBERTY

COMES NOW, Defendant, James Valdez, moves this court to dismiss action due to the state failing to establish probable cause and protect the defendant's rights to have the probable cause arraignment within 48-Hours after the warrantless arrest to prevent excessive restraint of liberty; the state proceeded intentionally or unintentionally with these safeguards neglected this shall result in immediate emancipation regarding Valdez liberty.

### *Statement of Facts*

- Extended restraint of liberty violated constitutional standards,
- Detectives failed to provide the pre-arrest determination for probable cause,
- The 48-Hour determination for probable cause upholds a constitutional background,
- Safeguards to establish a criminal complaint and prevent deprivation is to conduct any warrant or warrantless arrest with probable cause,
- The respondent was not arraigned to determine probable merits of cause for the warrantless arrest until a week after the 48-Hour unwarranted restraint of liberty,
- Detectives failed to uphold Fourth Amendment and Okla. Const. Art. II Sec. 30 insurance.

1

## *Statement of Case*

On 08/01/20 the state filed charges on Valdez based on a warrantless search & arrest for the case number CF-20-3454, officers that conducted the arrest failed to contact TPD and acted in "bad-faith" due to the Broken Arrow Task Force officer engaging in the search and arrest of Valdez knowingly outside of the city of Broken Arrow jurisdiction, this incident occurred in the City of Tulsa and the Broken Arrow officer knew he had no jurisdiction to engage in such operation; the courts and arresting officers knew this was conducted in "bad-faith" and still attempted to proceed but the state proceeded outside of Fourth Amendment requirements by not determining probability within 48-Hours, this lead to a (6) six day restraint of liberty which compelled Valdez to post bond without a duly arraignment to determine probable cause and set a bond; Valdez posted bond on approx. 08/06/20. Now the second restraint of liberty occurred with additional charges while Valdez was out on bond for CF-20-3454, Valdez encountered more contact with law enforcement which lead to a warrantless arrest on approx. 08/28/20 under case number CF-20-3845 Criminal charges was not filed until 09/03/20 and Valdez was not arraigned until approx. 09/04/20 approx. (7) seven days after the warrantless arrest failing to protect the 48-Hour restraint of liberty without the probable cause determination by the judge. Officers failed to meet Fourth Amendment probable cause requisites to establish the warrantless arrest, the courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Valdez did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 safeguards.*

## *Gerstein v. Pugh, 420 U.S. 103:*

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See *R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972).* Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, *e. g., 18 U. S. C. §§ 3146 (a)(2), (5).* When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the *Fourth Amendment* requires a judicial

determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

This result has historical support in the common law that has guided interpretation of the *Fourth Amendment*. See *Carroll v. United States, 267 U.S. 132, 149 (1925)*. At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. *2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736); 2 W. Hawkins, Pleas of the Crown 116-117 (4th ed. 1762).*  See also *Kurtz v. Moffitt, 115 U.S. 487, 498-499 (1885).*  The justice of the peace would "examine" the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime.  If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody. *1 M. Hale, supra, at 583-586; 2 W. Hawkins, supra, at 116-119; 1 J. Stephen, History of the Criminal Law of England 233 (1883).*  The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. *2 W. Hawkins, supra, at 112-115; 1 J. Stephen, supra, at 243*; see *Ex parte Bollman, 4 Cranch, at 97-101*. This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment, see *Ex parte Bollman, supra; Ex parte Burford, 3 Cranch 448 (1806); United States v. Hamilton, 3 Dall. 17 (1795)*, and there are indications that the Framers of the *Bill of Rights* regarded it as a model for a "reasonable" seizure. See *Draper v. United States, 358 U.S., at 317-320 (DOUGLAS, J., dissenting)*

In *Albrecht v. United States, 273 U.S. 1, 5 (1927)*, the Court held that an arrest warrant issued solely upon a United States Attorney's information was invalid because the accompanying affidavits were defective.  Although the Court's opinion did not explicitly state that the prosecutor's official oath could not furnish probable cause, that conclusion was implicit in the judgment that the arrest was illegal under the *Fourth Amendment*. More recently, in *Coolidge v. New Hampshire, 403 U.S. 443, 449-453 (1971)*, the Court held that a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate.  We reaffirmed that principle in *Shadwick v. City of Tampa, 407 U.S. 345 (1972)*, and held that probable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution.  See also *United States v. United States District Court, 407 U.S. 297, 317 (1972)*. The reason for this separation of functions was expressed by Mr. Justice Frankfurter in a similar context:

"A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication." *McNabb v. United States, 318 U.S. 332, 343 (1943).*

In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a

judicial hearing is not prerequisite to prosecution by information. *Beck v. Washington, 369 U.S. 541, 545 (1962); Lem Woon v. Oregon, 229 U.S. 586 (1913).*

Although it may be true that the *Fourth Amendment's* "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *ante, at 125 n. 27,* this case does not involve an initial arrest, but rather the continuing incarceration of a presumptively innocent person. Accordingly, I cannot join the Court's effort to foreclose any claim that the traditional requirements of constitutional due process are applicable in the context of pretrial detention.

It is the prerogative of each State in the first instance to develop pretrial procedures that provide defendants in pretrial custody with the fair and reliable determination of probable cause for detention required by the *Constitution. Cf. Morrissey v. Brewer, 408 U.S. 471, 488.* The constitutionality of any particular method for determining probable cause can be properly decided only by evaluating a State's pretrial procedures as a whole, not by isolating a particular part of its total system. As the Court recognizes, great diversity exists among the procedures employed by the States in this aspect of their criminal justice system. *Ante, at 123-124.*

In *Ex parte Bollman,* two men charged in the Aaron Burr case were committed following an examination in the Circuit Court of the District of Columbia. They filed a petition for writ of habeas corpus in the Supreme Court. The Court, in an opinion by Mr. Chief Justice Marshall, affirmed its jurisdiction to issue habeas corpus to persons in custody by order of federal trial courts. Then, following arguments on the *Fourth Amendment* requirement of probable cause, the Court surveyed the evidence against the prisoners and held that it did not establish probable cause that they were guilty of treason. The prisoners were discharged.

Because the standards are identical, ordinarily there is no need for further investigation before the probable cause determination can be made.

"Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'" *Mallory v. United States, 354 U.S. 449, 456 (1957).*

In his concurring opinion, MR. JUSTICE STEWART objects to the Court's choice of the *Fourth Amendment* as the rationale for decision and suggests that the Court offers less procedural protection to a person in jail than it requires in certain civil cases.

Moreover, the *Fourth Amendment* probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct.

## *County of Riverside v. McLaughlin, 500 U.S. 44:*

Scalia, J., dissented, expressing the view that (1) the *Fourth Amendment* preserves the traditional protections against unlawful arrest afforded by the common law, including the rule that (a) a

person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can," and (b) the only element bearing on the reasonableness of delay is the arresting officer's ability to reach a magistrate who can issue the needed warrant for further detention; (2) it is thus an unreasonable seizure within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (a) for reasons unrelated to arrangement of the probable cause determination or completion of the steps incident to arrest, or (b) beyond 24 hours after the arrest, which, according to available data, is all that is needed to complete the procedures incident to arrest; and (3) combining the probable cause determination with other proceedings does not justify a delay.

*ARREST §2 > without warrant -- judicial determination of probable cause -- promptness --  > Headnote:*

A jurisdiction that provides judicial determinations of probable cause within 48 hours of a warrantless arrest will, as a general matter, comply with the requirement, under the Federal Constitution's *Fourth Amendment*, that such determinations be provided promptly, and such a jurisdiction will therefore be immune from systemic challenges to its probable cause determination procedures, as (1) a 48-hour rule accommodates the competing interests involved, whereby (a) states have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no opportunity for a prior judicial determination of probable cause, but (b) prolonged detention based on incorrect or unfounded suspicion may unjustly imperil suspects' jobs, interrupt their sources of income, and impair their family relationships; (2) the vague admonition of the common law that an arresting officer must bring a person arrested without a warrant before a judicial officer "as soon as he reasonably can" offers no support for an inflexible standard that would require a probable cause determination to be made as soon as the administrative steps incident to arrest are completed; and (3) given that it can take 36 hours to process arrested persons, a rule setting 24 hours as the outer boundary for providing probable cause determinations would compel countless jurisdictions to speed up their criminal justice mechanisms substantially, presumably by reallocating tax dollars, and this is not a situation where the Constitution compels such direct interference with local control. *(Marshall, Blackmun, Stevens, and Scalia, JJ., dissented from this holding.)*

*ARREST §2 >  BAIL AND RECOGNIZANCE §6  >  CRIMINAL LAW §57 > warrantless arrest -- probable cause determination -- arraignment --  > Headnote:*

Warrantless arrests are permitted under the Federal Constitution's *Fourth Amendment*, but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause; states may choose to comply with the requirement of a prompt probable cause determination in different ways, and are not constitutionally compelled to provide a probable cause hearing the moment a suspect is finished being "booked," a rule which would make it impossible to incorporate probable cause determinations into the procedure for setting bail or fixing other conditions of pretrial release; jurisdictions are constitutionally permitted to incorporate probable cause determinations into other pretrial procedures, so long as they do so promptly; the promptness requirement means that only those proceedings that arise very early in the pretrial process--such as bail hearings and arraignments--may be combined

with the probable cause determination; a jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest; thus, a county which requires arraignments to be conducted without unnecessary delay and, in any event, within 2 days of arrest, is entitled to combine probable cause determinations with arraignments.

*ARREST §2 > without warrant -- probable cause determination -- delay -- > Headnote:*

The Federal Constitution's *Fourth Amendment* permits a reasonable postponement of a probable cause determination following a warrantless arrest while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system; but flexibility in this matter has its limits, and a state has no legitimate interest in detaining for an extended period individuals who have been arrested without probable cause.

*ARREST §2  >  CRIMINAL LAW §57  >  EVIDENCE §419 > probable cause for warrantless arrest -- judicial determination -- promptness -- burden of proof -- > Headnote:*

Although a jurisdiction that provides judicial determinations of probable cause for warrantless arrests within 48 hours of such arrests will generally comply with the promptness requirements of the Federal Constitution's *Fourth Amendment*, this does not mean that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours, as such a hearing may nonetheless violate the *Fourth Amendment* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably; examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake, but courts must allow a substantial degree of flexibility in evaluating whether the delay in a particular case is unreasonable; where an arrested individual does not receive a probable cause determination within 48 hours, the individual does not bear the burden of proving an unreasonable delay, but rather the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance; the fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance, nor do intervening weekends.

Respondent *McLaughlin* brought a class action seeking injunctive and declaratory relief under *42 U. S. C. § 1983*, alleging that petitioner County of Riverside (County) violated the holding of *Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854*, by failing to provide "prompt" judicial determinations of probable cause to persons who, like himself, were arrested without a warrant. The County combines such determinations with arraignment procedures which, under County policy, must be conducted within two days of arrest, excluding weekends and holidays. The County moved to dismiss the complaint, asserting that *McLaughlin* lacked standing to bring the suit because the time for providing him a "prompt" probable cause determination had already passed and he had failed to show, as required by *Los Angeles v. Lyons, 461 U.S. 95, 75 L. Ed. 2d 675, 103 S. Ct. 1660*, that he would again be subject to the allegedly unconstitutional conduct. The District Court never explicitly ruled on the motion to dismiss, but accepted for filing a second amended complaint -- the operative pleading here -- which named respondents *James*, *Simon*, and *Hyde* as additional individual plaintiffs and class representatives, and alleged that each of them had been arrested without a warrant, had not received a prompt probable cause

hearing, and was still in custody. The court granted class certification and subsequently issued a preliminary injunction requiring that all persons arrested by the County without a warrant be provided probable cause determinations within 36 hours of arrest, except in exigent circumstances. The Court of Appeals affirmed, rejecting the County's Lyons-based standing argument and ruling on the merits that the County's practice was not in accord with Gerstein's promptness requirement because no more than 36 hours were needed to complete the administrative steps incident to arrest.

The County's current policy and practice do not comport fully with *Gerstein's* requirement of a "prompt" probable cause determination. Pp. 52-59.

Although a hearing within 48 hours may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably, courts evaluating the reasonableness of a delay must allow a substantial degree of flexibility, taking into account the practical realities of pretrial procedures. Where an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, which cannot include intervening weekends or the fact that in a particular case it may take longer to consolidate pretrial proceedings. Pp. 55-58.

In *Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975)*, this Court held that the *Fourth Amendment* requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. This case requires us to define what is "prompt" under *Gerstein.*

The court then proceeded to the merits and determined that the County's policy of providing probable cause determinations at arraignment within 48 hours was "not in accord with *Gerstein's* requirement of a determination 'promptly after arrest'" because no more than 36 hours were needed "to complete the administrative steps incident to arrest." *Id., at 1278.*

On the other hand, prolonged detention based on incorrect or unfounded suspicion may unjustly "imperil [a] suspect's job, interrupt his source of income, and impair his family relationships." *Id., at 114.* We sought to balance these competing concerns by holding that States "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id., at 125 (emphasis added).*

Our task in this case is to articulate more clearly the boundaries of what is permissible under the *Fourth Amendment*. Although we hesitate to announce that the *Constitution* compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges.

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence . of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. One way to do so is to provide a judicial determination of probable cause immediately upon completing the administrative steps incident to arrest -- i. e., as soon as the suspect has been booked, photographed, and fingerprinted As JUSTICE SCALIA explains, several States, laudably, have adopted this approach. The Constitution does not compel so rigid a schedule, however. Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly. This necessarily means that only certain proceedings are candidates for combination. Only those proceedings that arise very early in the pretrial process -- such as bail hearings and arraignments -- may be chosen. Even then, every effort must be made to expedite the combined proceedings. See *420 U.S. at 124.*

One of those -- one of the most important of those -- was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can." *2 M. Hale, Pleas of the Crown 95, n.13 (1st Am. ed. 1847).* See also *4 W. Blackstone, Commentaries *289, *293; Wright v. Court, 107 Eng. Rep. 1182 (K. B. 1825)* ("It is the duty of a person arresting any one on suspicion of felony to take him before a justice as soon as he reasonably can"); *1 R. Burn, Justice of the Peace 276-277 (1837)* ("When a constable arrests a party for treason or felony, he must take him before a magistrate to be examined as soon as he reasonably can") (emphasis omitted). The practice in the United States was the same. See, *e. g., 5 Am. Jur. 2d, Arrest §§ 76, 77 (1962); Venable v. Huddy, 77 N.J.L. 351, 72 A. 10, 11 (1909); Atchison, T. & S. F. R. Co. v. Hinsdell, 76 Kan. 74, 76, 90 P. 800, 801 (1907); Ocean S. S. Co. v. Williams, 69 Ga. 251, 262 (1883); Johnson v. Mayor and City Council of Americus, 46 Ga. 80, 86-87 (1872); Low v. Evans, 16 Ind. 486, 489 (1861); Tubbs v. Tukey, 57 Mass. 438, 440 (1849) (warrant); Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 254 (1940). Cf. Pepper v. Mayes, 81 Ky. 673 (1884).* It was clear, moreover, that the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate who could issue the needed warrant for further detention. *5 Am. Jur. 2d, Arrest, supra, §§ 76, 77; 1 Restatement of Torts § 134, Comment b (1934); Keefe v. Hart, 213 Mass.*

*476, 482, 100 N.E. 558, 559 (1913); Leger v. Warren, 62 Ohio St. 500, 57 N.E. 506, 508 (Ohio 1900); Burk v. Howley, 179 Pa. 539, 551, 36 A. 327, 329 (1897); Kirk & Son v. Garrett, 84 Md. 383, 405, 35 A. 1089, 1091 (1896); Simmons v. Vandyke, 138 Ind. 380, 384, 37 N.E. 973, 974 (1894) (dictum); Ocean S. S. Co. v. Williams, supra, at 263; Hayes v. Mitchell, 69 Ala. 452, 455 (1881); Kenerson v. Bacon, 41 Vt. 573, 577 (1869); Green v. Kennedy, 48 N.Y. 653, 654 (1871); Schneider v. McLane, 3 Keyes 568 (NY App. 1867); Annot., 51 L. R. A. 216 (1901). Cf. Wheeler v. Nesbitt, 65 U.S. 544, 24 HOW 544, 552, 16 L. Ed. 765 (1860). Any detention beyond the period within which a warrant could have been obtained rendered the officer liable for false imprisonment. See, e. g., Twilley v. Perkins, 77 Md. 252, 265, 26 A. 286, 289 [**1673] (1893); Wiggins v. Norton, 83 Ga. 148, 152, 9 S.E. 607, 608-609 (1889); Brock v. Stimson, 108 Mass. 520 (1871); Annot., 98 A. L. R. 2d 966 (1964).*

Since the Court's opinion hangs so much upon Gerstein, it is worth quoting the allegedly relevant passage in its entirety.

"Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, . . . or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. In some States, existing procedures may satisfy the requirement of the *Fourth Amendment*. Others may require only minor adjustment, such as acceleration of existing preliminary hearings. Current proposals for criminal procedure reform suggest other ways of testing probable cause for detention. Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *420 U.S. at 123-125 (footnotes omitted; emphasis added).*

The Court's holding today rests upon the statement that "we recognize the desirability of flexibility and experimentation." But in its context that statement plainly refers to the nature of the hearing and not to its timing. That the timing is a given and a constant is plain from the italicized phrases, especially that which concludes the relevant passage. The timing is specifically addressed in the previously quoted passage of the opinion, which makes clear that "promptly after arrest" means upon completion of the "administrative steps incident to arrest."

Of course even if the implication of the dictum in *Gerstein* were what the Court says, that would be poor reason for keeping a wrongfully arrested citizen in jail contrary to the clear dictates of the *Fourth Amendment*. What is most revealing about the frailty of today's opinion is that it relies upon nothing but that implication from a dictum, plus its own (quite irrefutable because entirely value laden) "balancing" of the competing demands of the individual and the State. With respect to the point at issue here, different times and different places -- even highly liberal times and places -- have struck that balance in different ways. Some Western democracies currently permit

9

the executive a period of detention  without impartially adjudicated cause. In England, for example, the _Prevention of Terrorism Act 1989, §§ 14(4), 5, permits suspects to be held without presentation  and without charge for seven days. 12 Halsbury's Stat. 1294 (4th ed. 1989)._ It was the purpose of the Fourth Amendment to put this matter beyond time, place, and judicial predilection, incorporating the traditional common-law guarantees against unlawful arrest. The Court says not a word about these guarantees, and they are determinative. _Gerstein's_ approval of a "brief period" of delay to accomplish "administrative steps incident to an arrest" is already a questionable extension of the traditional formulation, though it probably has little practical effect and can perhaps be justified on de minimis grounds. To expand Gerstein, however, into an authorization for 48-hour detention related neither to the obtaining of a magistrate nor the administrative "completion" of the arrest seems to me utterly unjustified. Mr. _McLaughlin_ was entitled to have a prompt impartial determination that there was reason to deprive him of his liberty -- not according to a schedule that suits the State's convenience in piggybacking various proceedings, but as soon as his arrest was completed and the magistrate could be procured.

I have finished discussing what I consider the principal question in this case, which is what factors determine whether the post-arrest determination of probable cause has been (as the _Fourth Amendment_ requires) "reasonably prompt." The Court and I both accept two of those factors, completion of the administrative steps incident to arrest and arranging for a magistrate's probable-cause determination. Since we disagree, however, upon a third factor -- the Court believing, as I do not, that "combining" the determination with other proceedings justifies a delay -- we necessarily disagree as well on the subsequent question, which can be described as the question of the absolute time limit. Any determinant of "reasonable promptness" that is within the control of the State (as the availability of the magistrate, the personnel and facilities for completing administrative procedures incident to arrest, and the timing of "combined procedures" all are) must be restricted by some outer time limit, or else the promptness guarantee would be worthless. If, for example, it took a full year to obtain a probable-cause determination in California because only a single magistrate had been authorized to perform that function throughout the State, the hearing would assuredly not qualify as "reasonably prompt." At some point, legitimate reasons for delay become illegitimate.

I do not know how the Court calculated its outer limit of 48 hours. I must confess, however, that I do not know how I would do so either, if I thought that one justification for delay could be the State's "desire to combine." There are no standards for "combination," and as we acknowledged in _Gerstein_ the various procedures that might be combined "vary widely" from State to State. _420 U.S. at 123_. So as far as I can discern (though I cannot pretend to be able to do better), the Court simply decided that, given the administrative convenience of "combining," it is not so bad for an utterly innocent person to wait 48 hours in jail before being released.

With one exception, no federal court considering the question has regarded 24 hours as an inadequate amount of time to complete arrest procedures, and with the same exception every court actually setting a limit for a probable-cause determination based on those procedures has selected 24 hours. (The exception would not count Sunday within the 24-hour limit.) See _Bernard v. Palo Alto, 699 F.2d at 1025; McGill v. Parsons, 532 F.2d 484, 485 (CA5 1976); Sanders v. Houston, 543 F. Supp. at 701-703; Lively v. Cullinane, 451 F. Supp. at 1003-1004. Cf. Dommer v. Hatcher, 427 F. Supp. 1040, 1046 (ND Ind. 1975) (24-hour maximum; 48 if Sunday included), rev'd in part, 653 F.2d 289 (CA7 1981). See also Gramenos v. Jewel_

*Companies, Inc., 797 F.2d at 437 (four hours "requires explanation")*; Brandes, *Post-Arrest Detention* and the *Fourth Amendment*: Refining the Standard of *Gerstein v. Pugh, 22 Colum. J. L. & Soc. Prob. 445, 474-475 (1989)*. Federal courts have reached a similar conclusion in applying *Federal Rule of Criminal Procedure 5(a)*, which requires presentment before a federal magistrate "without unnecessary delay." See, *e. g., Thomas, The Poisoned Fruit of Pretrial Detention, 61 N. Y. U. L. Rev. 413, 450, n.238 (1986) (citing cases).* And state courts have similarly applied a 24-hour limit under state statutes requiring presentment without "unreasonable delay." New York, for example, has concluded that no more than 24 hours is necessary from arrest to arraignment, *People ex rel. Maxian v. Brown, 164 A.D.2d at 62-64, 561 N.Y.S.2d at 421-422.* Twenty-nine States have statutes similar to New York's, which require either presentment or arraignment "without unnecessary delay" or "forthwith"; eight States explicitly require presentment or arraignment within 24 hours; and only seven States have statutes explicitly permitting a period longer than 24 hours. *Brandes*, supra, *at 478, n.230*. Since the States requiring a probable-cause hearing within 24 hours include both New York and Alaska, it is unlikely that circumstances of population or geography demand a longer period. Twenty-four hours is consistent with the *American Law Institute's Model Code. ALI, Model Code of Pre-Arraignment Procedure § 310.1 (1975).* And while the *American Bar Association* in its proposed rules of criminal procedure initially required that presentment simply be made "without unnecessary delay," it has recently concluded that no more than six hours should be required, except at night. *Uniform Rules of Criminal Procedure, 10 U. L. A. App., Criminal Justice Standard 10-4.1 (Spec. Pamph. 1987).*

A few weeks before issuance of today's opinion there appeared in the Washington Post the story of protracted litigation arising from the arrest of a student who entered a restaurant in Charlottesville, Virginia, one evening, to look for some friends. Failing to find them, he tried to leave -- but refused to pay a $ 5 fee (required by the restaurant's posted rules) for failing to return a red tab he had been issued to keep track of his orders. According to the story, he "was taken by police to the Charlottesville jail" at the restaurant's request. "There, a magistrate refused to issue an arrest warrant," and he was released. *Washington Post, Apr. 29, 1991, p. 1.* That is how it used to be; but not, according to today's decision, how it must be in the future. If the *Fourth Amendment* meant then what the Court says it does now, the student could lawfully have been held for as long as it would have taken to arrange for his arraignment, up to a maximum of 48 hours.

## *Extended Restraint of Liberty Over 48 Hours:*

If the government wishes to detain an arrested suspect pending further proceedings (rather than let the suspect go in the meantime), the *Fourth Amendment* adds an additional requirement to the government's tasks. In *Gerstein v. Pugh, 420 U.S. 103, 114, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975)*, the Supreme Court held that "the *Fourth Amendment* requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." When an arrest has been made subject to a warrant, a judicial determination of probable cause has already been made as a prerequisite to obtaining the arrest warrant. In the case of warrantless arrests, however, there has been no pre-arrest probable cause determination by a judicial officer. In such cases, the Court has held that to detain the suspect pending further proceedings, the government

11

must obtain--within 48 hours of the arrest--a probable cause determination by a judicial officer. *County of Riverside v. McLaughlin, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991).* the courts and arresting officers knew this was conducted in "bad-faith" and still attempted to proceed but the state proceeded outside of Fourth Amendment requirements by not determining probability within 48-Hours, this lead to a (6) six day restraint of liberty which compelled Valdez to post bond without a duly arraignment to determine probable cause and set a bond; Valdez posted bond on approx. 08/06/20. Now the second restraint of liberty occurred with additional charges while Valdez was out on bond for CF-20-3454, Valdez encountered more contact with law enforcement which lead to a warrantless arrest on approx. 08/28/20 under case number CF-20-3845 Criminal charges was not filed until 09/03/20 and Valdez was not arraigned until approx. 09/04/20 approx. (7) seven days after the warrantless arrest failing to protect the 48-Hour restraint of liberty without the probable cause determination by the judge. Officers failed to meet Fourth Amendment probable cause requisites to establish the warrantless arrest, the courts lacks jurisdiction to prosecute failing to promptly provide a probable cause arraignment within 48-Hours under *Gerstein* and *McLaughlin* requirements Valdez was arrested without a warrant on approx. 08/28/20 and Valdez did not get arraigned to determine such cause for arrest until approx. 09/04/20 in front of Judge David Guten approx. (7) seven days exceeding the 48-Hour requirement this violated Valdez guaranteed insurance under *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 safeguards.*

Investigating officers went under Oklahoma provisions during this arrest because the officers did not see Valdez commit or attempt a public offense in the officers presence. See *22 Okl. St. § 196.*

Under both federal and state constitutional law, all warrantless seizures are presumptively unreasonable. *U.S. Const. amends. IV, XIV; Katz v. United States,389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Okla. Const. art. II, § 30; Lucas v. State, 704 P.2d 1141, 1143 (Okl.Cr. 1985).* An arrest is a "seizure" within the constitutional prohibition against unreasonable seizures. See *Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).* When a warrantless arrest is challenged, the State carries the burden of proving that the arrest was lawful. *Leigh v. State, 587 P.2d 1379, 1383 (Okl.Cr. 1978); Greene v. State, 508 P.2d 1095, 1100 (Okl.Cr.App. 1973). (Citing Tomlin v. State of Oklahoma, 869 P.3d 334 (1994).*

Defendant contends that, because the Constitution requires a probable cause determination when the government seeks to detain a warrantless arrestee pending further proceedings, the Rules that deal with probable cause to arrest must govern both situations. Defendant seeks support for his position in the Supreme Court's decision in *Giordenello v. United States, 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958).* In *Giordenello,* the Court held that the Federal Rules of Criminal Procedure:

must be read in light of the constitutional requirements they implement. The language of the *Fourth Amendment* . . . of course applies to arrest as well as search warrants. The protection afforded by these Rules, when they are viewed against their constitutional background, is that the inferences from the facts which lead to the complaint ". . . be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States, 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 [(1948)].* The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the "probable cause" required to support a warrant

exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause.

The purpose of a complaint is to ensure that no suspect is arrested without probable cause. *Id. at 485-86.* The purpose of a *McLaughlin* determination is to ensure that no warrantless arrestee is detained, pending further proceedings, without probable cause. *500 U.S. at 53.*

The Supreme Court held in *Gerstein* that the constitutional standard for probable cause is the same whether the government seeks to detain an arrestee pending further proceedings or to obtain an arrest warrant. *420 U.S. at 120.* Accordingly, a probable cause determination for purposes of detention pending further proceedings must be supported by an oath or affirmation. Although a complaint establishing probable cause might satisfy both purposes, the defense found statutory basis in *22 Okl. St. § 749*, *22 Okl. St. § 3007*, and *12 Okl. St. § 2803(8)(A)(B)(C)(D)(E)* to establish that it is impermissible for the government to proceed in the pre-arrest probable cause determination, failing to uphold the legislative policies listed to support probable cause.

The state has a 48-hour window under *McLaughlin* to determine the warrantless arrest is supported by probable cause and the arresting officer also has to satisfy the *Gerstein* requirement which is based upon a probable cause determination for purposes of detention pending further proceedings that must be supported by an oath or affirmation. In *Gerstein* the Supreme Court held that the probable cause standard is the same procedure to detain an arrestee pending further proceedings or to obtain an arrest warrant, the defense has numerous cases that explain the importance of sworn depositions, affidavits, and oral testimony to satisfy probable cause; officers used hearsay that lacked personal knowledge when issuing such complaint to justify the warrantless arrest for Valdez, officers never obtained sworn depositions, affidavits, or testimony to support the probable cause determination. Arresting officers held Valdez for (6) six days for the matter of CF-20-3454 compelling Valdez to post bond without arraignment and approx. (7) seven days in the matter of CF-20-3845 before a probability arraignment was provided, this failed to satisfy the *McLaughlin* and *Gerstein* standard because it was more than (48) hours and officers filed hearsay information which does not satisfy the probable cause determination, the following cases and statutory policies explain the arresting officers and prosecution lacked probable cause under the *Fourth Amendment* and *Okla. Const. Art. II Sec. 30 rights*:

If arresting officers consider this warrantless arrest a rule of practice absent exigent circumstances it cannot rely on good-faith due to it constituting corruption. Any excuse prosecutors or arresting officers attempt to conspire outside of constitutional standards will never prevail over Valdez *Fourth Amendment* constitutional rights. Further, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." See *Gouled v. United States, 255 U.S. 298, 313 41 S. Ct. 261, 65 L. Ed 647*; quoted and approved in *Agnello v. United States, 269 U.S. 20, 34, 35, 46 S. Ct. 4, 7, 70 L.Ed. 145.*

James D. Valdez
# 1145439
360 N. Denver Ave.
Tulsa, OK 74103
D.L.M.

20CV - 620 JED - JFJ

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

RECEIVED

DEC 01 2020

United States District Court Clerk
Northern District of Oklahoma
333 West 4th St. Room #411
Tulsa, OK 74103-3819

neopost
11/30/2020
US POSTAGE $002.60⁰
FIRST-CLASS MAIL
ZIP 74127
041M1225 1097

postage mailed 11/30/20
LWK